COURT OF APPEALS OF VIRGINIA


Present:    Judges Humphreys, Powell and Senior Judge Clements


VIVIANA MAYANES
                                                            MEMORANDUM OPINION[*]
v.      Record No. 1508-10-3                                    PER CURIAM
                                                            FEBRUARY 8, 2011
SHENANDOAH VALLEY DEPARTMENT
  OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF AUGUSTA COUNTY
                            Victor V. Ludwig, Judge

            (S. Scott Baker, on brief), for appellant.

            (James B. Glick; Angela V. Whitesell; Rebecca E. Belew, Guardian
            *ad litem* for the minor children; Vellines, Cobbs, Goodwin & Glass,
            P.L.C., on brief), for appellee.


        Viviana Mayanes (mother) appeals an order terminating her parental rights to three of her

children.  Mother argues that the trial court erred by finding the evidence was sufficient to terminate

her parental rights to the three children who are subject to this appeal.  Upon reviewing the record

and briefs of the parties, we conclude that this appeal is without merit.  Accordingly, we

summarily affirm the decision of the trial court.  See Rule 5A:27.

                                    BACKGROUND

        We view the evidence in the light most favorable to the prevailing party below and grant

to it all reasonable inferences fairly deducible therefrom.  See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

_____

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

In July 2005, the Shenandoah Valley Department of Social Services (the Department) first became involved with mother and her children.[1] The Department continued offering services to the family to avoid foster care; however, in 2007, the Department received reports of sexual contact by an older sibling (M.A.) with the younger children. The Department entered into a safety agreement with mother. One of the conditions of the safety plan was that M.A. could not live in the same house as the younger children and could have no contact with them. Mother arranged to move M.A. out of the house, but he subsequently moved back in and had contact with the children.

On May 30, 2007, the Department removed the children from mother and placed them in foster care. On November 19, 2008, the juvenile and domestic relations district court (the JDR court) terminated mother's parental rights to the children.[2] Mother appealed to the trial court. After hearing all of the evidence and written argument of the parties, the trial court issued a detailed letter opinion, dated April 28, 2010, explaining its ruling of terminating mother's parental rights pursuant to Code § 16.1-283(B) and (C)(2). The trial court entered orders terminating mother's parental rights to the children on June 11, 2010. This appeal followed.

ANALYSIS

Mother argues that there was insufficient evidence to terminate her parental rights to the children.

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support

_____

[1] There are three minor children (N.A., A.A., and C.A.) who are the subject of this appeal and who were removed from mother's care. The three children will be collectively referred to as "the children." Mother has an older child (M.A.), who was not one of the three children removed from mother's care and is now an adult.

[2] Father's parental rights also were terminated.

it." Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Mother concedes that on June 27, 2007, the JDR court found that the children were abused and neglected by their parents. However, mother argues that the abuse and neglect arose from the situation with M.A. Since mother removed M.A. from the home, mother asserts that the situation that led to the findings of abuse and neglect was resolved and the children could have returned home within a reasonable time.

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Mother did remove M.A. from the home for a period of time; however, despite the Department's prohibition against contact between M.A. and the children, mother allowed him to return to the home and have contact with the children. At trial, mother testified that M.A. did not

live with her, but she saw him as often as she could, and he was at her house whenever he could be. She did not recognize the problem with him being around the younger children. The trial court commented, "Although one may appreciate a mother's love for a troubled son, one must question the judgment of a parent who does not understand that her commitment to one child creates an insurmountable barrier to her relationship with three more."

"'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)).

The trial court stated, "If 'what's past is prologue,' the future of [mother] being able to remedy the situation is not hopeful." (Quoting William Shakespeare, The Tempest, act 2, sc. 1). Given mother's history of lack of understanding, or unwillingness, to protect the children from M.A., it is unlikely that she will protect the children in the future. The trial court did not err in terminating her parental rights under Code § 16.1-283(B).

Furthermore, the trial court found that there was sufficient evidence to terminate mother's parental rights under Code § 16.1-283(C)(2).

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or
> unable within a reasonable period of time not to exceed twelve
> months from the date the child was placed in foster care to remedy
> substantially the conditions which led to or required continuation
> of the child's foster care placement, notwithstanding the
> reasonable and appropriate efforts of social, medical, mental health
> or other rehabilitative agencies to such end.

Code § 16.1-283(C)(2).

Mother received services from the Department for more than one year before the children were removed. The Department prohibited mother from allowing M.A. to live with her and the children and from having any contact with the children, but mother violated this requirement. The

Department also required mother to obtain a psychological evaluation and follow all recommendations of that evaluation. Mother participated in the psychological evaluation, and a psychiatric evaluation was recommended. It took her nine months to participate in the psychiatric evaluation, despite the Department's efforts to assist mother in complying with this requirement. The psychiatrist testified that mother needed pharmacological intervention and outpatient psychotherapy, and even with this assistance, it could take one to two years to achieve any benefit. Furthermore, the psychiatrist opined that it was not likely that mother could "competently" parent her children for "at least a couple of years." The Department required mother to participate in a parenting class, which she did, but was unable to apply what she learned with respect to C.A. Mother also was unable to set boundaries for her children. The visitations with the children were disruptive and became detrimental to the children. Mother did not cooperate with the Department and did not complete the individual counseling. As mother did not complete the Department's requirements within twelve months from the date of the removal, the trial court terminated her parental rights, especially since there was evidence that she needed substantially more time to meet those requirements.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

The children had been in foster care for approximately three years when the trial court issued its letter opinion. Mother's situation had not improved, and according to the psychiatrist, she needed two more years of intensive therapy to resolve her issues.

The children were doing very well in foster care. N.A., who was sixteen years old, wanted mother's parental rights to be terminated so that she could remain with her foster parents,

to whom she developed a strong bond. She made all "A's" last year in school and was involved in extracurricular activities. According to her counselor, she had "overcome the problems normally associated with sexual abuse." A.A., who was almost twelve years old, had bonded very well with his foster family, and his counselor stated that a transition back to mother would be like a "second removal." Like N.A., A.A. was doing well in school and participating in extracurricular activities. C.A., who was eleven years old, has autism and was placed in a therapeutic foster home. C.A. improved immensely in this setting. The guardian *ad litem* explained that C.A. went from "practically a wild animal" who "was totally out of control and seemed lost in her own world" to one who was learning the alphabet, colors, and numbers. C.A. became a "loving and affectionate child" who had an "excellent rapport" with her foster care mother. She was performing numerous tasks that the guardian *ad litem* did not think was possible at first. However, the guardian *ad litem* stated that C.A.'s behavior "deteriorated considerably" after visiting with her mother and it would take days to get back into her routine. Therefore, the trial court held that it was in the children's best interests that mother's parental rights be terminated.

Accordingly, based on the record, the trial court did not err, as there was sufficient evidence to terminate mother's parental rights under Code § 16.1-283(B) and (C)(2).

CONCLUSION

For the foregoing reasons, the trial court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.